[Civ. No. 43540. Second Dist., Div. Four. Dec. 16, 1974.]

R. EVELYN JENSEN, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF LAWNDALE SCHOOL DISTRICT
OF LOS ANGELES COUNTY, Defendant and Respondent.

## COUNSEL

Galiano, Hansen & Wheatley and Horace Wheatley for Plaintiff and Appellant.

John H. Larson, County Counsel, and John J. Wagner, Deputy County Counsel, for Defendant and Respondent.

## OPINION

COLE, J.*—Appellant R. Evelyn Jensen was a permanent certified employee of the Lawndale School District. On May 15, 1973, the respondent board of trustees of the district determined not to rehire her for the 1973-1974 school year. Her services were entirely satisfactory. The sole reason for the board's decision was that Mrs. Jensen would become 65 years of age on September 8, 1973, and the first day of the fall semester of the 1973-1974 school year would be September 11, 1973. The board's determination was based on Education Code, section 13325,[1] which reads in applicable part: ". . . [W]hen a permanent or probationary employee reaches the age of 65 years, his permanent or probationary classification shall cease and thereafter employment shall be from year to year at the discretion of the governing board."

The only issue raised on this appeal is whether this section allows the board to terminate an employee because the actual rendition of paid services will not commence until after the employee's 65th birthday. The trial court so concluded and denied Mrs. Jensen's petition for a writ of mandate. Mrs. Jensen argues that she was entitled to reemployment for the 1973-1974 school year, commencing July 1, 1973, and that the only effect of her 65th birthday was that her permanent classification ceased as of her birth date. ██ We agree, and accordingly reverse the judgment.

The board argues that in applying section 13325 the applicable year is the period of time during which a teacher will actually render teaching services. It asks us to reject the July 1 - June 30 school year (§ 5101) as pertinent to section 13325. It points to the fact that Mrs. Jensen's services

---

*Assigned by the Chairman of the Judicial Council.

[1]All statutory references are to the Education Code unless otherwise specified.

were, in 1973, to commence a few days after her 65th birthday, and that during her years of employment, the actual fall semester had always started in the Lawndale District after the date of Mrs. Jensen's birthday. This position is not well taken.

In the first place it is clear from the statutory scheme for employment of certified personnel that the *classification* status of permanency is one thing; the contract under which an employee performs his or her actual duties is another. (*La Rue* v. *Board of Trustees* (1940) 40 Cal.App.2d 287, 293 [104 P.2d 639] and cases cited.)

*Taylor* v. *Board of Education* (1939) 31 Cal.App.2d 734 [89 P.2d 148], and *Fidler* v. *Board of Trustees* (1931) 112 Cal.App. 296 [296 P. 912], also emphasize the distinction between the right to tenure, derived from permanent classification, and the annual contract under which each teacher is employed.

It is not disputed that a certificated employee attains permanent classification after successfully completing three consecutive school years and being "re-elected" for a fourth year. (§ 13304; *Vittal* v. *Long Beach Unified Sch. Dist.* (1970) 8 Cal.App.3d 112, 120 [87 Cal.Rptr. 319]; *La Rue* v. *Board of Trustees, supra,* at p. 297.) Section 13258 provides that each person elected shall be deemed re-elected from year to year except for specified reasons. ■ Having achieved the status of permanent classification, such an employee is entitled to the benefits of section 13447. That section provides that, except for specified causes, no permanent employee shall be deprived of his position. ■ "Re-elected" means that the teacher is employed during the school year. (*Hogsett* v. *Beverly Hills School Dist.* (1936) 11 Cal.App.2d 328 [53 P.2d 1009].) And, under the provisions of section 13403 no permanent employee shall be dismissed except for specified causes. Teachers with permanent status may not be dismissed without their consent nor deprived of the permanent classification merely because a district does not have sufficient funds to pay his salary. (§ 13313.) If a reduction in the number of teachers is necessary elaborate procedures are required, including notice by May 15 prior to the start of the school year. (§ 13447.)

■ It is only the *permanent classification* of a certificated employee which is affected by his attaining the age of 65. The statute at issue here, section 13325, by its very language does no more than to say that "when a permanent employee reaches the age of 65 years, his *permanent classification* shall cease . . ." (Italics supplied.) The section does *not* say

that the performance of services to be rendered under a contract which was automatically renewed at an earlier date shall cease.

Other retirement statutes confirm this. Section 13327 provides that "The retirement of any employee of a school district under the provisions of *any* retirement law shall automatically effect the dismissal of the employee from the employ of the district *at the end of the current school year.*" (Italics supplied.) Former section 13326 (repealed by Stats. 1973, ch. 976, § 2), concerning school districts with their own supplementary retirement plans and not applicable to the Lawndale School District, called for employees reaching a specified compulsory retirement age to "be retired at the close of the school year." Reading all of the retirement provisions in harmony, section 13325 should receive the same construction.

Secondly, since every employee will have a birthday sometime during the school year, if the board could, as here, purport to terminate a permanent employee just because a 65th birthday fell sometime between the July 1 start of the school year and the date that actual classes commenced in the fall semester there would be two classes of certificated employees: those just described who are forced to retire while *still 64,* and those who could continue working until the end of the school year in which they became 65, because their birthdays fell after the date classes opened. Nothing in the statutes indicates that the Legislature intended such a result. Rather, the passage of the predecessor statute to section 13325 "was a part of a general statewide plan . . . for retirement . . . of certificated school employees." (*Phelps* v. *Prussia* (1943) 60 Cal.App.2d 732, 739-740 [141 P.2d 440].) A general plan should have uniform and general application.

In the third place, the board's interpretation would discriminate between certificated permanent employees assigned to teaching duties, and those assigned to administrative positions. The latter, we judicially note as a matter of common knowledge (Evid. Code, § 452, subd. (g)) are called upon to perform services during July and August, as well as early September, and not just when classes are in session.[2] They are covered by the same employment statutes as are teachers. (E.g., §§ 12902, 13055, 13187.) Nothing in section 13325 supports an interpretation that they are entitled to work during the school year in which their 65th birthday falls

---

[2]At oral argument, the deputy county counsel conceded this to be correct.

while teachers whose like birthdays occur prior to the start of fall semester classes but after July 1 may not work in such school years.

The board here recognizes the distinction between the right of a permanent employee to be reemployed for the next year and the contract of employment itself. It argues that at the moment Mrs. Jensen became 65 "she no longer had a right to reemployment for the ensuing contract school year." That statement is correct, if it is confined to the statutory language of section 13325 that an employee's permanent classification ceases at the age of 65. The attempt, however, to import into the statute a concept of a *"contract* school year," as opposed to the school year defined in section 5101 is not grounded in the law.

The board relies on two decisions to support its argument, *Fidler* v. *Board of Trustees, supra,* 112 Cal.App. 296, and *Williams* v. *Bagnelle* (1903) 138 Cal. 699 [72 P. 408]. It argues that these cases require that the meaning of the phrase "school year" must be ascertained by reference to the contract itself and that the definition of school year found in section 5101 must not be followed. It then states that Mrs. Jensen's contract "clearly designates" that the teaching year is to commence on September 11, 1973, a date after her 65th birthday. Since the *lack* of a contract between Mrs. Jensen and the board for the 1973-1974 school year is what this litigation is all about, the argument referred to is incomprehensible.

In addition, the cases cited not only do not support the board, but in the case of *Williams, supra,* compel a contrary conclusion. *Fidler, supra,* involved a claim by a teacher that he was entitled to receive the same salary in a subsequent year as had been paid him the year before. The court merely pointed out (112 Cal.App. at p. 304) that there was a distinction between the right to status as a permanent teacher, which right was conferred by statute, and the right to compensation each year, which right was a proper subject of contract. The case does not aid the board.

The board's treatment of *Williams, supra,* seriously disturbs us. Respondent's brief quotes from the decision (138 Cal. at p. 704) as is indicated in the margin.[3] Respondent then argues that under both *Fidler*

---

[3] ". . . The contract of plaintiff with the trustees was to teach one year from July 5, 1899, at a salary of one thousand dollars, payment to be made by drawing requisitions upon the county superintendent of schools. Defendant contends that the word "year" in the contract means a calendar year and renders the contract void, because the trustees are expressly forbidden to contract for a period beyond June 30th next ensuing, and that

and *Williams, supra,* "the meaning of school year must be ascertained by reference to the contract itself." Entirely omitted from the brief filed by respondent is the very next statement of the court in *Williams:* "The contract was with reference to school-teaching, and, in the absence of anything to the contrary, it must be construed as if the provisions of the law limiting the time for which the contract could be made was inserted in it, and that the term 'year' meant a school year (Pol. Code, sec. 1878) which begins the first day of July and ends on the last day of June."

Section 1878 of the former Political Code is an antecedent of present section 5101 of the Education Code. Respondent's incomplete quotation from *Williams, supra,* deleting parts not favorable to its argument, is at best, seriously misleading to this court, being calculated to persuade us not only that we should look to the contract itself, but that such a look would establish that something other than the statutorily defined "school year" is referred to. The actual holding of *Williams, supra,* is to the direct contrary.

Of course, as noted above, there is no actual contract in existence for the 1973-1974 year between Mrs. Jensen and the board. It is clear, however, that as in *Williams, supra,* the board's employment contracts with its teachers are "with reference to school-teaching." We see no reason to depart from the holding in that case.

■ The fact, urged by the board, that the board pays its teachers 10 times a year in equal installments (once per "school month"; § 5102) does not support the board's argument that teachers' contracts contemplate a "school year of teaching" commencing with the start of classes. The superintendent of the district testified that teachers are paid a "yearly salary." More importantly, section 13517 allows a school district board to pay its certificated employees in either 10 or 11 or 12 equal payments, instead of by the "school month," and section 13518 states that where the board "arranges to pay persons employed by it in 12 equal payments for the year, it may pay each monthly installment at the end of each calendar month, *whether or not the persons are actually engaged in teaching during the month.*" (Italics supplied.)

Based on these sections, the Attorney General has expressed the opinion that a school board may make payments for July and August, although this is prior to the time the employee receiving the payments

---

the contract in question extends beyond that period. *But the term "year" does not necessarily mean a calendar year. We are to gather its meaning from the subject-matter of the contract, and the connection in which the term is used. . .' "* (Italics by respondent.)

commences to perform actual services in September. (54 Ops.Cal.Atty. Gen. 269 (1971).) The fact that Mrs. Jensen was paid by the school month does not in any way indicate that, for the purposes of section 13325, she should be deemed to have been employed for a period other than the statutory school year.

■ In summary, we hold that section 13325 may not be invoked until a permanent employee actually "reaches the age of 65 years." The effect of the section is that, at that time, any "permanent classification" ceases. The permanent employee is entitled to teach throughout the school year (July 1 to June 30) in which the age of 65 years is attained, whether the 65th birthday falls before or after the commencement of actual teaching duties.

The judgment is reversed, with directions to enter judgment for petitioner.

Jefferson, Acting P. J., and Dunn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 19, 1975.